IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| TWYLAH M. MAHAN-HILDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-CV-4140-C-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Twylah M. Mahan-Hilden petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("the Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. An administrative law judge ("ALJ") found she had multiple severe impairments, but retained the residual functional capacity ("RFC") to perform work as an assembler of plastic products, a personal and home care companion, or a final inspector. The ALJ thus found her not disabled.

Because the ALJ's opinion is supported by substantial evidence on the record as a whole, the Commissioner's decision is AFFIRMED.

**Background**

A complete summary of the record is presented in the parties' briefs and repeated here only to the extent necessary. Plaintiff applied for disability insurance benefits in 2007, the denial of which was eventually appealed to this Court. *Mahan-Hilden v. Astrue*, No. 11-4143-CV-C-DGK-SSA (W.D. Mo. filed May 31, 2011). The Court remanded.

Relevant to this appeal, Plaintiff's applications for Title II and Title XVI benefits allege a disability onset date of April 9, 2005. Her date of last insured is December 31, 2010. After the Commissioner denied her applications, Plaintiff requested an ALJ hearing. On January 23, 2013, the ALJ found that Plaintiff was not disabled. The Social Security Administration Appeals Council denied her request for review on June 25, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, — F.3d —, No. 14-2834, 2015 WL 3650732, at *4 (8th Cir. June 15, 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a sequential evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous

2
Case 2:14-cv-04140-DGK   Document 16   Filed 07/23/15   Page 2 of 10

period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). This five-step process considers whether: "(1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant work; and if not, (5) if he could perform any other kind of work." *Bernard*, 774 F.3d at 486.

Plaintiff argues that the ALJ erred by failing to: (1) properly consider her severe impairments at Step Two; (2) properly weigh the evidence of record in formulating her RFC at Step Four; and (3) pose a proper hypothetical question to the vocational expert ("VE") at Step Five.

### I. Plaintiff fails to establish that she had more severe impairments than the ALJ found.

Plaintiff argues the ALJ erred by failing to classify as severe impairments her fibromyalgia, shoulder dysfunction, radiculopathy, coronary artery disease, and Crohn's disease. The claimant has two obligations at Step Two. First, she must establish that the affliction at issue is an "impairment" under the Regulations, meaning it "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. That medical evidence must consist of "signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id*. For fibromyalgia specifically, one form of acceptable medical evidence is a finding of fibromyalgia made consistent with either of two sets of criteria delineated by the American College of Rheumatology; a mere diagnosis is insufficient. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

Second, the claimant must establish that the impairment is "severe," meaning it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Severity is not an onerous requirement for the claimant to meet,

but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted).

Starting with fibromyalgia, Plaintiff cites no record evidence that a physician has properly diagnosed her with fibromyalgia pursuant to the American College of Rheumatology's criteria. *See* SSR 12-2p, 2012 WL 3104869, at *2. With a single, isolated exception, R. at 310, she also does not point out any general medical notes, signs, symptoms, or laboratory findings to support a fibromyalgia diagnosis. *See* SSR 12-2p, 2012 WL 3104869, at *2 ("We cannot rely upon the physician's diagnosis alone."); *cf. Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) (remanding to the ALJ where a physician had officially diagnosed fibromyalgia, and the diagnosis was based on medical observations from twenty visits). Rather, the fibromyalgia references she cites are devoid of medical findings and so were not binding on the ALJ. *See* R. at 476, 694, 698. Therefore, the ALJ had substantial record evidence to exclude fibromyalgia from Plaintiff's impairments. *See* 20 C.F.R. §§ 404.1508, 416.908; *see also Hood v. Colvin*, No. 14-CV-3008-S-DGK-SSA, 2015 WL 438168, at *2 (W.D. Mo. Feb. 3, 2015).

The ALJ did not find Plaintiff's degenerative shoulder issue, bilateral radiculopathy, coronary artery disease, and Crohn's disease to be severe impairments. Even assuming that these dysfunctions were "impairments," Plaintiff does not explain how they were "severe." While the record establishes that Plaintiff's left shoulder caused pain and generally decreased her range of motion, *e.g.* R. at 1328, her brief does not suggest *any* "basic work activities" that her shoulder "significantly" precluded her from doing. *See Kirby*, 500 F.3d at 707 ("It is the claimant's burden to establish that [her] impairment [is] severe."). Similarly, physicians *diagnosed* Plaintiff with bilateral radiculopathy, *e.g.* R. at 203, but again, she suggests no *limitations* posed by this condition. *See id.* Therefore, she has failed to sufficiently develop an argument as to how the

ALJ erred in not finding her shoulder dysfunction or radiculopathy to be severe impairments. *See also Gamez v. Colvin*, 2014 WL 4112925, at *4–5 (W.D. Mo. Aug. 19, 2014); *cf. Jain v. CVS Pharm., Inc.*, 779 F.3d 753, 758 (8th Cir. 2015) (declining to impose on the district court any "affirmative obligation to the plumb the records in order to find a genuine issue of material fact" on a motion for summary judgment, especially since the record there ran "over 500 pages"—1,000 fewer pages than in this case).

Finally, Plaintiff argues that the ALJ found *too many* impairments to be severe. *E.g.* Pl.'s Br. 57 (Doc. 9-1) ("There is no statement as to where the [ALJ] found the arthritis to be severe enough to become an impairment under the Social Security guidelines."). Because this purported misclassification of impairments works in her favor, the Court rejects this error as harmless. *See Wright*, 2015 WL 3650732, at *5 (excusing a harmless error).

## II. The ALJ properly weighed the record evidence to determine Plaintiff's RFC.

Plaintiff takes issue with two sets of evidence used by the ALJ to determine her RFC: her subjective complaints, and opinions from medical professionals.

### A. Plaintiff fails to impeach the ALJ's credibility analysis.

Plaintiff testified at her second hearing about several limitations imposed by her impairments, for example difficulty lifting anything over five pounds. R. at 1055. The ALJ partially discredited Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. R. at 983–86. The ALJ still found that Plaintiff has significant limitations, for which he imposed substantial restrictions in formulating her RFC. R. at 982. Plaintiff claims the ALJ erred in partially rejecting her testimony.

The ALJ must examine the claimant's credibility to properly assess her RFC. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In making this determination, the ALJ must take into account

all record evidence, including the medical evidence and the claimant's prior work record. *Wright*, 2015 WL 3650732, at *5. Because "[t]he ALJ is in a better position to evaluate credibility," the district court must defer to his credibility findings if "they are supported by sufficient reasons and substantial evidence on the record as a whole." *Andrews v. Colvin*, — F.3d —, No. 14-3012, 2015 WL 4032122, at *4 (8th Cir. July 2, 2015).

Here, the ALJ articulated several well-supported reasons for discounting Plaintiff's credibility. Plaintiff challenges his analysis in three ways. First, she argues that her myriad daily activities do not undercut her claims that she has less RFC than the ALJ found. Plaintiff reported, among other activities: caring for her father, including minding his finances and driving him to the doctor, R. at 1061, 1066; inviting a woman to live with her so that she could teach the woman how to care for a baby, R. at 343, 1067; going fishing, R. at 366, 419, 430; and lifting up to thirty pounds, R. at 229. *See also, e.g.*, R. at 123, 346, 353, 683. Cumulatively, these activities undermine Plaintiff's claims that she could not "do substantially all of the[] activities" described in the definition of light work, which forms the basis for the ALJ's RFC formulation. 20 C.F.R. §§ 404.1567(b), 416.967(b); *see Ramirez v. Barnhart*, 292 F.3d 576, 578, 582 (8th Cir. 2002) (affirming an ALJ's rejection of a claimant's subjective claims that were inconsistent with an RFC of light work).

Second, Plaintiff argues that the ALJ committed legal error by failing to discuss her work history. *See Wright*, 2015 WL 3650732, at *5. The ALJ specifically questioned Plaintiff about her work history at the second hearing. R. at 1044–46, 1074–75. Although the ALJ did not explicitly *discuss* the work history in his decision, that does not mean he did not *consider* the work history. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted,

6

and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). In his decision, the ALJ implicitly found the work history did not bear positively or negatively on Plaintiff's credibility. This assignment of error is rejected.

Third, the ALJ found Plaintiff's medical records had large gaps in which she apparently received little to no medical treatment. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) ("[T]he ALJ was entitled to discount Comstock's complaints based on his failure to pursue regular medical treatment."). Plaintiff does not challenge this finding; she argues only that any gaps can be explained by her inability to afford medical treatment and medications. *See* R. at 332, 476, 671, 698, 717. "Although lack of financial resources may in some cases justify the failure to seek medical attention," *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987), that excuse is not valid when "there [i]s no evidence that the claimant sought to obtain any low-cost medical treatment from her doctor or from clinics and hospitals," *Murphy v. Sullivan*, 953 F.2d 383, 386–87 (8th Cir. 1992). Here, Plaintiff cites no evidence that she attempted to avail herself of low- or no-cost treatment plans available to indigent persons. Therefore, she fails to demonstrate that any treatment gaps are excused by her financial situation. *See id.*

Plaintiff has failed to show how the ALJ's credibility findings were procedurally improper or unsupported by substantial evidence on the record as a whole, so the Court rejects this argument. *See Andrews*, 2015 WL 4032122, at *4.

**B. The ALJ properly weighed the medical opinions.**

In determining Plaintiff's RFC, the ALJ discussed at length but discounted the opinions of at least nine medical professionals. R. at 986–90. Plaintiff argues the ALJ erred in giving diminished weight to four of them.

7

The ALJ must rely on the medical evidence to determine a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control." *Bernard*, 774 F.3d at 487. The ALJ may discount or disregard a treating physician's opinion "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* Whatever weight the ALJ decides to give a physician's opinion, he must "always give good reasons." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Substantial evidence on the record as a whole supports the ALJ's partial rejections of these four opinions. First, Chris J. Weber, M.D., opined that Plaintiff had "a possible need" to lie face upward once or twice in a four-hour period. R. at 296. As the ALJ rightly indicated, that opinion is vague, unsupported by narrative discussion, unaccompanied by objective medical findings, based off a single visit, and ignorant of the wealth of medical evidence later entered into the record. *See Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." (alterations omitted)); *Vasquez v. Schweiker*, 701 F.2d 733, 736–37 (8th Cir. 1983) ("The credibility of a medical opinion is particularly suspect when it is based on incomplete evidence.").

Second, treating chiropractor Arthur Eberting, D.C., completed three medical-source statements suggesting extreme physical restrictions. R. at 324–25, 593–94, 1311–13. Plaintiff argues that these opinions support her subjective complaints. However, the ALJ properly found her to be "not entirely credible," and she does not cite any credible complaints that are compatible with these medical-source statements.

8
Case 2:14-cv-04140-DGK   Document 16   Filed 07/23/15   Page 8 of 10

Third, state agency consultant Marc Maddox, Ph.D., opined that Plaintiff had no severe mental impairment. R. at 1518–28. As Plaintiff concedes, that consultant "was not provided a comprehensive set of medical records in order to prepare that report." Pl.'s Br. 65 (Doc. 9-1 at 65); *see Vasquez*, 701 F.2d at 736–37.

Fourth, nurse practitioner Jean Moore, CFNP ("Nurse Moore"), found that Plaintiff could not work. R. at 580–82. Plaintiff emphasizes that she had a long treating relationship with Nurse Moore (whom she erroneously identifies as a medical doctor[1]), so Nurse Moore's opinion should have been given more weight. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). Even if she did have a long treating history with Plaintiff, Nurse Moore wrote this opinion after their *first* meeting. Therefore, any subsequent history is irrelevant.

Plaintiff raises additional, conclusory arguments about how the ALJ assessed opinions by her other doctors, but none warrants relief or compels further discussion. The Court holds that substantial evidence on the record as a whole supports the ALJ's "good reasons" for rejecting certain medical professionals' opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

## III. The ALJ posed a proper question to the VE.

Finally, Plaintiff challenges the hypothetical question asked of the VE at her hearing. Plaintiff argues that the hypothetical question was defective because it did not include all of the limitations placed on her by her impairments.

To constitute substantial evidence at Step Five, a VE's testimony must be based on a hypothetical question accounting for all of the claimant's proven impairments. *Buckner*, 646 F.3d at 560–61. Because the ALJ need only account for the claimant's proven impairments, he need not include limitations from sources he properly disregarded. *Id.* at 561.

---

[1] The Commissioner may give less weight to the medical opinion of a nurse practitioner than to the medical opinion of a physician. *Lacroix v. Barnhart*, 465 F.3d 881, 885–87 (8th Cir. 2006); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

9

As explained above, Plaintiff has failed to show the ALJ committed any error in weighing the record medical evidence. Therefore, the ALJ was free to ignore her discredited subjective complaints and the discredited medical opinions of certain doctors. *See id.*

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying Title II and XVI benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  July 23, 2015   /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT